IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



BNSF RAILWAY COMPANY,           §
                                §
          Plaintiff,            §
                                §
VS.                             §   NO. 4:09-CV-702-A
                                §
AMERICAN TRAIN DISPATCHERS      §
ASSOCIATION,                    §
                                §
          Defendant.            §

<u>MEMORANDUM OPINION</u>
and
<u>ORDER</u>

Before the court for decision are cross-motions for summary judgment. Plaintiff, BNSF Railway Company, ("BNSF") seeks a summary adjudication vacating an award of Public Law Board No. 7290 ("PLB 7290") in favor of defendant, American Train Dispatchers Association, ("ATDA"). ATDA moves for a summary judgment decreeing that the award complied with the requirements of the Railway Labor Act ("RLA"), 45 U.S.C. § 151, <u>et seq.</u>, and that, in rendering the award, PLB 7290 conformed and confined itself to matters within its jurisdiction. After having reviewed the motions for summary judgment and supporting documentation, the entire record, and applicable legal authorities, the court has concluded that BNSF's motion should be granted and that ATDA's should be denied.

I.

Background

While the parties disagree as to the legal significance of certain facts and the proper interpretation to be given to PLB 7290's award, there is no genuine dispute as to any material fact, thus making summary adjudication appropriate in this case.

BNSF and ATDA are parties to collective bargaining agreements governing rates of pay, rules, and working conditions for BNSF's train dispatchers.  In early 2005, BNSF and ATDA disagreed as to the interpretation of their agreements relative to comp time to be awarded to train dispatchers.  When they were unable to resolve their differences, the dispatchers represented by ATDA walked out of BNSF's Fort Worth dispatching center.  The walkout occurred while trains were running.  Most of the employees who walked out did so mid-shift.  BNSF was not warned of the planned strike until the dispatchers began walking out. As a consequence, BNSF was required to shut down its entire nationwide rail transportation network for several hours.

Because of the crisis created by the walkout, BNSF agreed to implement the method of calculating comp time proposed by ATDA in exchange for an end to the walkout.  Contemporaneously, BNSF filed suit against ATDA in this court, seeking injunctive relief

2

on the ground that the comp time dispute was a minor dispute subject to mandatory arbitration, and that the ATDA strike was unlawful.  By order dated May 12, 2005, this court, District Judge Terry Means presiding, issued a ruling declaring that the dispute was a minor dispute subject to compulsory arbitration and that the ATDA organized strike arising from the dispute was therefore unlawful, violating the RLA.

BNSF maintains that the illegal strike caused it financial loss of approximately $300,000.  It filed a grievance against ATDA pursuant to section 3 of the RLA, see 45 U.S.C. § 153 First (i), claiming that ATDA breached its obligations under the parties' express and implied agreements by engaging in the surprise strike, and seeking recovery from ATDA of damages suffered as a result of the breach of contract.  When a resolution could not be reached through on-property handling, BNSF filed a claim against ATDA with the Third Division of the National Railroad Adjustment Board ("NRAB") pursuant to 45 U.S.C. § 153 First (i), seeking recovery of monetary damages BNSF claims it suffered by reason of the breach by ATDA of its agreements with BNSF.  ATDA removed the claim to PLB 7290 pursuant to 45 U.S.C. § 153 Second.

The provisions of the parties' agreements BNSF claims ATDA violated by the strike are the following:

(1)  The parts of Article 2 of the parties' Schedule Agreement that provide that:

    (a)  HOURS OF SERVICE.

    Eight (8) consecutive hours shall constitute a day's work.

    (b)  OVERTIME.

    Time worked in excess of eight (8) hours on any day, exclusive of the time required to make transfer, will be considered overtime and shall be paid for at the rate of time and one-half on the minute basis.

    (c)  TRANSFER TIME.

    The term "time required to make transfer", as used in Section (b) of this Article, includes the time it is necessary for the train dispatcher who is being relieved to turn over to the relieving train dispatcher the information necessary to permit the relieving train dispatcher to fully and completely begin dispatcher service on the [track] to which he is assigned.  A train dispatcher who is required to remain in charge during time the transfer is being made will not be considered as having accrued overtime.  Except to extent provided herein with respect to transfer time, a train dispatcher required to remain on duty after the expiration of his tour of duty will be paid for such time as overtime.

J.A. at 25; 488-89.  BNSF maintains that, when read together, Articles 2(a) and 2(c) require each dispatcher to work his or her full shift and continue thereafter until properly relieved.

4

(2)  Article 7(f) of the same agreement, which provides

that:

> An assigned train dispatcher . . . temporarily
> absent from his assignment, for any cause . . . shall
> notify the chief dispatcher sufficiently in advance to
> enable such officer to notify train dispatchers
> affected prior to their going off duty on the last day
> worked on the position from which they are to be
> displaced.

Id. at 26; 491.  BNSF contends this provision was violated

because none of the dispatchers who participated in the strike

gave notice prior to leaving their post.

BNSF further contends that the strike violated implied terms

of their agreements that have arisen as a result of past

practice.  Specifically, BNSF contends that the strike breached

the implied obligations, growing from the day-to-day practices of

the parties, that:

(1)  Dispatchers report to work on time unless excused.

(2)  Dispatchers work a full shift and are not
     permitted to leave their assignment during their
     shift unless authorized to do so and properly
     relieved.

(3)  Dispatchers wait at the end of their shift to be
     relieved -- they cannot simply leave their post
     unsupervised if their replacement is late.

(4)  Dispatchers keep their supervisors informed of any
     changes in their availability, and in particular
     notify management in advance if they will not be
     available for work on a particular date or time.

(5)   Dispatchers perform their duties in a careful and safe manner and take special care to ensure the safety of train crews and others within their region of responsibility.

Id. at 28.  BNSF cites as evidence of the long-standing practices of the parties, provisions of BNSF's General Code of Operating Rules ("GCOR").  The two rules to which BNSF attaches significance are Rules 1.6 and 1.15, which read as follows:

1.6   Conduct

Employees must not be:

1.   Careless of the safety of themselves or others.

2.   Negligent.

3.   Insubordinate.

4.   Dishonest.

5.   Immoral.

6.   Quarrelsome.

or

7.   Discourteous.

Any act of hostility, misconduct, or willful disregard or negligence affecting the interest of the company or its employees is cause for dismissal and must be reported.   Indifference to duty or to the performance of duty will not be tolerated.

Id. at 28; 530-31.

1.15 Duty - Reporting or Absence

> Employees must report for duty at the designated
> time and place with the necessary equipment to
> perform their duties.  They must spend their time
> on duty working only for the railroad.  Employees
> must not leave their assignment, exchange duties,
> or allow others to fill their assignment without
> proper authority.  Continued failure by employees
> to protect their employment will be cause for
> dismissal.

Id. at 28; 532.

ATDA disagrees with BNSF's interpretation of Articles 2 and
7 of the parties' agreement; and, ATDA maintains that the rules
existing by reason of the GCOR, while they might well represent
the long-standing practices of the parties, are not binding on
ATDA and its members because the GCOR was not part of the
parties' agreements.

On September 18, 2009, PLB 7290 issued an award denying
BNSF's claim.  The parties disagree as to the basis of the
denial.  BNSF contends that the denial was based on a conclusion
by PLB 7290 "that BNSF has no contractual rights under its
agreements with ATDA to 'access the statutory claims procedure'
of the RLA; i.e., that the parties' agreements precluded BNSF
from seeking damages or pursuing a grievance under the RLA."
BNSF's Br. in Supp. of Its Mot. for Summ. J. at 7.  As an
ingredient of this contention, BNSF asserts that PLB 7290

7

"interpreted the RLA rather than the parties' collective bargaining agreement and thereby exceeded its jurisdiction." Compl. at 7, ¶ 24.  BNSF also contends that the "Award is wholly baseless and completely without reason because it concludes that BNSF lacks any remedy whatsoever for breach of contract by ATDA," with the result that the Board exceeded its jurisdiction.  Id. at 7-8, ¶ 26.

In contrast, ATDA maintains that "[w]hat the Board held was that none of the contract provisions [BNSF] cited are applicable to a strike situation, so BNSF cannot rely on those provisions to recover from ATDA damages alleged to have resulted from the strike," ATDA's Reply Br. in Supp. of Its. Mot. for Summ. J. at 2, or, put another way, that "the Board decided that the contract provisions BNSF relied on do *not* create obligations on ATDA's part at all, so those articles provide no basis for [BNSF's] claim that because ATDA breached them, BNSF is due damages from [ATDA]." Id. at 2-3.

By the instant action, BNSF seeks vacatur of PLB 7290's award and a remand of the dispute to the Board, accompanied by a declaration that, as a matter of law, BNSF has a statutory right pursuant to 45 U.S.C. § 153 First (i) to bring a claim in arbitration for breach of contract by a union signatory to a

collective bargaining agreement and that, as a matter of law, if

a breach of contract is proven, BNSF is entitled to a remedy for

the breach.   Compl. at 8.   ATDA seeks by counterclaim a ruling

confirming and enforcing the award.

II.

Analysis

A.   Applicable Principles Governing Review of the Award

"Judicial review of a labor-arbitration decision . . . by

the district court[] is extremely limited."   Am. Eagle Airlines,

Inc. v. Air Line Pilots Ass'n, 343 F.3d 401, 405 (5th Cir. 2003).

This court's jurisdiction to review the award is based on, and

the limits of the review are prescribed by, 45 U.S.C. § 153 First

(q), which reads, in pertinent part, as follows:

> The court shall have jurisdiction to affirm the order
> of the division, or to set it aside, in whole or in
> part, or it may remand the proceedings to the division
> for such further action as it may direct.   On such
> review, the findings and order of the division shall be
> conclusive on the parties, except that the order of the
> division may be set aside, in whole or in part, or
> remanded to the division, for failure of the division
> to comply with the requirements of this chapter, for
> failure of the order to conform, or confine itself, to
> matters within the scope of the division's
> jurisdiction, or for fraud or corruption by a member of
> the division making the order.

The arbitrator "acts within its jurisdiction so long as its

decision is drawn from the essence of the [collective bargaining

9

agreement]." <u>BNSF Ry. Co. v. Bhd. of Maint. of Way Employees</u>,
550 F.3d 418, 426 (internal quotation marks omitted).  "The
essence of the [agreement] includes not just the express language
contained within the four corners of the document, but also
implied terms and the parties' practice, usage, and custom." <u>Id.</u>

The Fifth Circuit is among the courts that have held that a
party who breaches a collective bargaining agreement may be held
accountable in damages.  <u>See</u> <u>Pence Constr. Corp. v. Hoisting &</u>
<u>Portable Eng'rs Local 450</u>, 484 F.2d 398, 400-01 (5th Cir. 1973)
("The courts have long recognized that a party who breaches a
collective bargaining agreement may be held accountable in
damages.")  As the Southern District of Illinois explained, "a
monetary award to a carrier for breach of a [collective
bargaining agreement] is not precluded by the RLA." <u>United</u>
<u>Transp. Union v. Union Pac. R.R. Co.</u>, No. 08-cv-299-JPG, 2009 WL
297572, at *4 (S.D. Ill. Feb. 6, 2009).  The fact that the RLA
does not provide for statutory damages to be awarded to either
unions or railroads does not mean that monetary damages are not
available for breach of a collective bargaining agreement.  <u>Id.</u>
at *3-4 ("[T]he fact that statutory monetary damages are not
available to a carrier does not preclude the carrier from seeking
contract damages in arbitration").  When a contract violation is

found, the arbitrator "must fashion a remedial order to bring the parties' actions in conformity with the contract and make reparation for past infringements." Local 369, Bakery & Confectionary Workers Int'l Union of Am. v. Cotton Baking Co., 514 F.2d 1235, 1237 (5th Cir. 1975). The arbitrator has such an obligation even though the collective bargaining agreement may not specify the relief required for every conceivable contractual violation. Id.

If an arbitrator bases his decision on his view of the requirements of legislation, such as the RLA, rather than on an interpretation of the agreement of the parties, the arbitrator exceeds the scope of his authority, and the award will not be enforced. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 53 (1974). And, an arbitrator exceeds his authority when he does not carry out the parties' agreement or his position is not rational. Bhd. of R.R. Trainmen v. Cent. of Ga. Ry. Co., 415 F.2d 403, 412 (5th Cir. 1969). The award must, in some logical way, be derived from the wording or purpose of the contract. Id. "Where an arbitrator exceeds his contractual authority, vacation or modification of the award is an appropriate remedy." Am. Eagle Airlines, 343 F.3d at 406 (internal quotation marks & brackets omitted).

B.   <u>The Award</u>

With respect to the reliance by BNSF on provisions of the

GCOR, PLB 7290 said:

> In the instant case, there may have been a
> violation of the General Code of Operating Rules
> (GCOR), when the Organization sanctioned a walkout that
> was later determined to be an illegal strike over a
> minor dispute, but this did not give [BNSF] access to
> the statutory claims procedure.  These rules set forth
> [BNSF's] expectations relative to employee performance
> and behavior.  We concur with the [ATDA] that [BNSF]
> can discipline employees if they violate these rules.
> However, there is no evidence there was ever any
> negotiations or mutual understanding that these rules
> would give access to [BNSF] to seek damages for strikes
> over minor disputes.  To now give such meaning to these
> rules is to ignore the fact they were unilaterally
> implemented.  In addition, there is nothing in the GCOR
> which indicates they apply to [ATDA] in any way or
> could be used to exceed remedies provided by the Act
> relative to illegal strikes.

J.A. at 4-5.

The explanation set forth above is followed by reference to

the holdings of the Supreme Court and lower courts over the years

that the RLA does not provide for monetary damages as a result of

a strike conducted over a minor dispute.  <u>Id.</u> at 5.  Then, the

author of the award made the point that nothing in the provisions

of the parties' agreement provides that BNSF has the right to

seek damages for the strike of which BNSF complains.  <u>Id.</u>  That

point was followed by a statement of the author's conclusion that

12

"[t]o the contrary, there is persuasive evidence the parties never intended that such a breach would provide [BNSF] access to a claim for damages." Id. The author explained that she reached such a conclusion from the fact that the carrier unsuccessfully sought on more than one occasion to negotiate a "no-strike" provision into the parties' agreements. Id. at 5-8.

From her review of BNSF's attempts to cause a "no-strike" provision to be included in the contract, the author of the award reached the further conclusions that:

> [BNSF's] contention that they have always had the right to file a claim and seek damages under the existing terms of the Collective Bargaining Agreement is not tenable. If for no other reason, there is no evidence there was ever a mutual understanding that the provisions cited by [BNSF] in this case, provided such access. Certainly the very premise of good faith bargaining mandates that there be a mutual understanding of the language incorporated. There is nothing to demonstrate that the parties intended the language, or a breach thereof, to be a means by which [BNSF] could secure damages for a strike over minor disputes. Moreover, the language is clear in its meaning. If [BNSF] believed the language included such a wholesale right, they had an obligation to advise the Union they believed the language meant something other than what it said. Not only does the language not provide that access, [BNSF] never once, prior to the instant dispute, claimed such a right. Furthermore,

their attempts to secure a no-strike clause into the
Agreement belies their contention.

Id. at 8-9.

In response to BNSF's contention that implied in the
parties' agreements was a right to recover from ATDA damages for
a breach of the agreements, the author of the award said:

> Nor can this Board accept [BNSF's] position that
> there is an implied right to damages for a breach of
> the Agreement.  Again, we are not talking about private
> contracts.  We are dealing with a Collective Bargaining
> Agreement under the RLA and the courts have determined
> the penalty for an organization's breach of the
> Agreement is promulgated by the Act.  The parties have
> negotiated Agreements in recent years fully aware of
> the courts' interpretation of the remedy provided by
> the Act for illegal strikes.  The assertion that there
> was always an implied right to seek damages in these
> cases, which the carriers never used, is unpersuasive.
> In addition, for the reasons cited herein, it is
> unfounded.

Id. at 9.

In conclusion, the author noted that there was "nothing to
show [that ATDA was] not sincere in their belief that [BNSF's]
actions constituted a 'major' dispute"; and she thought important
that ATDA "has not demonstrated a callous disregard for [BNSF] in
the past."  Id. at 10.  The author's concluding remark was that,
while the frustration felt by BNSF and other carriers over the
needless disruption of service is understandable, "[i]t is in the
best interest of the parties to resolve disputes by the most

14

expeditious and least costly means which is through the statutory claims process."  Id.

C.   The Award Was Outside the Scope of the Arbitrator's Jurisdiction

While the reasoning of the author of the award is not entirely clear or consistent, the award shows on its face that it was produced by the author's incorrect conclusions that:

(1)  The fact that monetary damages cannot be awarded for a violation of the provisions of the RLA has relevance to whether BNSF has a remedy for breach of contract.

(2)  Damages cannot be awarded for breach of the agreements if the agreements do not expressly provide the right to seek damages for an illegal strike.

(3)  The fact that BNSF was unsuccessful in causing a no-strike provision to be included in the agreements is evidence that the parties never intended that a breach of the agreements would provide BNSF access to a claim for damages.

(4)  Absence of evidence that there was a mutual understanding that the contractual provisions relied on by BNSF in this case provided BNSF the right to file a claim

and seek damages under the agreements causes BNSF's contention that it has those rights to be not tenable.

(5)   For BNSF to be entitled to enforce its contract with ATDA by seeking a monetary award for damages suffered by reason of ATDA's violation of the agreements, BNSF was required first to advise ATDA that it believed that the language of the agreements gave BNSF the right to recover damages for breach of the agreements.

(6)   The fact that the parties' agreements were collective bargaining agreements rather than private contracts causes BNSF not to have an implied right to recover damages from ATDA suffered by reason of ATDA's breach of contract.

(7)   BNSF's failure to show that ATDA was not sincere in its belief that the dispute that led to the strike was not a minor dispute is relevant to whether BNSF is entitled to receive a monetary award for loss it suffered by reason of ATDA's breach of the agreements by engaging in the illegal strike.

(8)   The fact that ATDA has not demonstrated a callous disregard for BNSF in the past is relevant to whether BNSF

has a contractual right to recover monetary damages caused
by ATDA's breach of the parties' agreements.

(9)  The statutory claims process (apparently meaning
the claims process prescribed by the RLA) does not
contemplate an award of monetary damages to BNSF for breach
of contract as part of the statutory dispute scheme.

Of interest, the author of the award did not disagree with
BNSF that the illegal strike violated the parties' agreements.
Rather, the author of the award assumed that the strike violated
the agreements, and limited her discussion to reasons why BNSF
cannot seek monetary relief from ATDA for damages it suffered by
reason of those violations.  The arbitrator failed to give effect
to the admonitions of the Fifth Circuit that a party who breaches
a collective bargaining agreement may be held accountable in
damages and that when a contract violation is found, the
arbitrator "must fashion a remedial order to bring the parties'
actions in conformity with the contract and make reparation for
past infringements."  Local 369, 514 F.2d at 1237.  Here, the
arbitrator chose to disregard her obligation to fashion a
remedial order and make reparation for a past infringement of the
agreements of the parties.  Instead, the appearance is that she
based her decision, at least in part, on her view of the

17

requirements of the RLA. The arbitrator was more intent on enforcing the limits of relief available under the RLA for a violation of the RLA than on carrying out the parties' agreements. The award is not rational in the context of controlling legal principles. It was not, in any logical way, derived from the wording or purpose of the parties' agreements.

Therefore, the court has concluded that PLB 7290 acted outside the scope of its jurisdiction, its award denying BNSF's claim should be vacated, and the claim should be remanded to PLB 7290 for further proceedings consistent with this memorandum opinion and order.[1] To whatever extent there is any uncertainty on the subject, the court declares that, as a matter of law, BNSF has a statutory right pursuant to section 3 First (i) of the RLA to bring a claim in arbitration for breach of contract by ATDA and that, if a breach of contract is shown, as a matter of law BNSF is entitled to a remedy for such breach.

---

[1]BNSF requests under the heading "Conclusion" in its brief in support of its motion for summary judgment that the court "remand this case for further proceedings before a new Public Law Board or before the National Railroad Adjustment Board." BNSF's Br. in Supp. of Mot. for Summ. J. at 21. No legal authority is provided in support of that request; and, the request is inconsistent with BNSF's prayer for relief in its complaint "[t]hat the Court vacate the Award of Public Law Board No. 7290 and remand the dispute to the Board for further proceedings consistent with the Court's opinion." Compl. at 8. Thus, the court has not given serious consideration to the request made in the conclusion of the brief.

III.

ORDER

The court ORDERS that the motion for summary judgment of BNSF be, and is hereby, granted, and that the motion for summary judgment of ATDA be, and is hereby, denied.

The court further ORDERS that the award of PLB 7290 denying BNSF's claim be, and is hereby, vacated, and that the claim be, and is hereby, remanded to PLB 7290 for further proceedings consistent with this memorandum opinion and order.

The court further ORDERS and DECLARES that, as a matter of law, BNSF has a statutory right pursuant to 45 U.S.C. § 153 First (i) to bring a claim in arbitration for breach of contract by ATDA and that, if a breach of contract is shown, as a matter of law BNSF is entitled to a remedy for such breach.

SIGNED July __6__, 2010.

JOHN McBRYDE
United States District Judge